UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rory Hunter and Karen Hunter, as
personal representatives of the estate
of Tabatha Hunter, deceased, and as
representatives/trustees of the
beneficiaries in the wrongful death action,

                Plaintiffs,

v.

Canadian Pacific Railway Limited, and its
wholly owned subsidiary, Canadian Pacific
Railway Company, and Soo Line Railroad
Company,

                Defendants.

Civ. No. 07-3314 (RHK/AJB)
**MEMORANDUM OPINION
AND ORDER**

---

Daniel E. Phillips, Stacey E. Tjon, Mike Miller, Solberg, Stewart, Miller & Tjon, Ltd., Fargo, North Dakota, Stacy K. Hauer, Zimmerman Reed, PLLP, Minneapolis, Minnesota, for Plaintiffs.

Jacqueline S. Anderson, Stephen W. Plambeck, Nilles Law Firm, Fargo, North Dakota, for Defendants.

---

**INTRODUCTION**

Plaintiffs Rory and Karen Hunter ("the Hunters") commenced this wrongful-death and survival action in Minnesota state court against Canadian Pacific Railway Limited, Canadian Pacific Railway Company ( collectively "CP"), and Soo Line Railroad Company ("Soo Line"), doing business as Canadian Pacific Railway.  CP removed the action to this Court asserting diversity and federal-question jurisdiction.  The Hunters

now move to remand, arguing that this action was improperly removed because Soo Line is an in-state Defendant and the doctrine of "complete preemption"[1] does not apply in this case. For the reasons set forth below, the Court will grant the Hunters' Motion.

## BACKGROUND

The Hunters are residents of North Dakota. (Am. Compl. ¶ 1.) Tabatha Hunter was the daughter of Rory and Karen Hunter, and prior to her death on July 22, 2005, she lived with her parents in North Dakota. (Id.) CP is a Canadian corporation with its principal place of business in Alberta, Canada. (Notice of Removal at 3.) Soo Line is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. (Am. Compl. ¶ 4.)

On July 22, 2005, at a railroad crossing located in North Dakota, a train struck a vehicle being driven by 18-year old Nicholas Sadek, killing Nicholas and his 16-year-old passenger Tabatha Hunter. (Id. ¶ 5.) The Hunters commenced a wrongful death and survival action against CP in Hennepin County District Court. On July 11, 2007, the Hunters served and filed an Amended Complaint, naming Soo Line as a defendant. In their Amended Complaint, the Hunters alleged that Defendants were negligent in a number of ways: (a) the train was operated at excessive speed, (b) the train operators failed to keep a proper lookout, (c) the train operators failed to slow the train down when they saw, or should have seen, a vehicle approaching the crossing, (d) the train operators

---

[1] Complete preemption is rare, but occurs when the "federal law is so dominant in a particular area . . . that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Hurt v. Dow Chem. Co., 963 F.2d 1142, 1144 (8th Cir. 1992).

failed to utilize a warning device properly, and (e) signs, markings, and warning devices protecting the crossing were inadequate. (Id. ¶ 6.) On July 12, 2007, CP removed the action to this Court. On August 10, 2007, the Hunters filed the instant Motion to Remand.

## ANALYSIS

**I.     Removal of State-Court Action to Federal Court**

Removal of an action from state court to federal court is authorized by 28 U.S.C. § 1441 and its procedures are governed by 28 U.S.C. § 1446.[2] A state-court action may be properly removed to federal court if the case falls within the original jurisdiction of the federal courts. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, also known as "federal-question jurisdiction," and "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different states," 28 U.S.C. § 1332(a)(1), also known as "diversity jurisdiction." A case may be removed without reference to the citizenship of the parties if the basis of removal is federal-question jurisdiction. 28 U.S.C. § 1441(b). However, where removal

---

[2] Following oral argument on the Hunters' Motion, CP informed the Court that it filed a copy of its Notice of Removal with the state court. (See Doc. Nos. 26, 28.) The removal statute requires a defendant to "promptly" file a copy of the notice of removal with the clerk of the state court before removal is effected. 28 U.S.C. § 1446(d). Whether CP was prompt in filing the notice of removal with the state court, however, does not affect this Court's subject-matter jurisdiction. See Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 528 (8th Cir. 1996) ("A procedural defect in removal, such as untimeliness, does not affect the federal court's subject-matter jurisdiction and therefore may be waived."); see also Dukes v. S.C. Ins. Co., 770 F.2d 545, 547 (5th Cir. 1985).

3

is based upon diversity jurisdiction, the case is removable only if none of the defendants is a citizen of the state in which the case is brought.  Id.

Here, there is no dispute that CP's removal on the basis of diversity jurisdiction is contravened by 28 U.S.C. § 1441(b) because Soo Line is an in-state defendant.  See Hurt v. Dow Chem. Co., 963 F.2d 1142, 1145 (8th Cir. 1992) ("A defendant may not remove to federal court on the basis of diversity if any of the defendants is a citizen of the state where the action was filed.").[3]  Accordingly, the Court will address whether it has federal-question jurisdiction over the Hunters' claims.

### A.  Well-Pleaded Complaint Rule

A plaintiff may avoid removal to federal court by alleging only state law claims. Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606, 611 (8th Cir. 2006).  Under the well-pleaded complaint rule, federal-question jurisdiction only exists if a federal question is presented on the face of the complaint.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  A case may not be removed on the basis of a federal defense, such as preemption, even if the defense is anticipated in the complaint and both parties concede

---

[3] "Under the rule of unanimity, ordinarily all defendants must join in a notice of removal or the case will be remanded."  Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 755 n.2 (8th Cir. 2001).  Although Soo Line answered the Amended Complaint after the Notice of Removal was filed, it did not consent to the removal, which is generally required in actions against multiple defendants.  But, "the lack of consent is not a jurisdictional defect."  See Wilkinson v. Ordway Group, LLC, Civil No. 07-2678, 2007 WL 3037319, at *1 n.1, (D. Minn. Oct. 16, 2007) (Magnuson, J.) (citing Thorn v. Amalgamated Transit Union, 305 F.3d 826, 833 (8th Cir. 2002)); see also  Miller v. Principal Life Ins. Co., 189 F. Supp. 2d 254, 258 n.4 (E.D. Pa. 2002) ("failure of all defendants to consent to removal is a waivable defect and does not in any way deprive [the] court of subject matter jurisdiction").  The Court concludes that the defect in removal is waived because Soo Line answered the Amended Complaint in this Court and then appeared at the Hunters' Motion.

that it is the only question at issue. Id. at 392-93. However, an exception to the well-pleaded complaint rule is the "complete preemption" doctrine. Id. at 393.

### B. Complete-Preemption Doctrine

Under the complete-preemption doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998) (quoting Caterpillar, 482 U.S. at 393). In other words, "the federal law so occupies the field that any complaint alleging facts that come within the statute's scope necessarily 'arises under' federal law, even if the plaintiff pleads a state-law claim only. It is not just that a preemption defense is present: the claim is completely federal from the beginning." Hurt, 963 F.2d at 1144 (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). However, it is important to note the distinction between "complete preemption" and the defense of preemption:[4]

> This jurisdictional issue of whether "complete preemption" exists is very different from the substantive inquiry of whether a "preemption defense" may be established. The jurisdictional question concerning "complete preemption" centers on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims. The latter inquiry, concerning a "preemption defense," is a substantive inquiry as to whether a legal defense exists. This would be a matter for trial by a court having jurisdiction.

Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989); accord Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996) ("Complete preemption . . .

---

[4] Indeed, "it is not unusual for parties and even the federal judiciary to be confused about the difference." Blaylock v. Hynes, 104 F. Supp. 2d 1184, 1186 (D. Minn. 2000).

5

has jurisdictional consequences that distinguish it from preemption asserted only as a defense. The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim."); Visina v. Wedge Cmty. Co-op, Inc., Civil No. 07-122, 2007 WL 2908043, at *7 (D. Minn. Oct. 1, 2007) (explaining that the affirmative defense of preemption operates to defeat a plaintiff's claim, whereas removal under "complete preemption" operates as a jurisdictional doctrine, permitting a defendant to remove a state-law claim to federal court because federal law has replaced whatever state-law claim exists with an exclusive federal cause of action). Thus, courts "must determine *whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court*, mindful that in the ordinary case federal preemption is merely a defense to a plaintiff's lawsuit." Magee, 135 F.3d at 602 (internal citations omitted) (emphasis added).

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA"), to promote railroad safety and reduce railroad-related accidents. 49 U.S.C. § 20101. The FRSA gives the Secretary of Transportation broad powers to "prescribe regulations and issue orders for every area of railroad safety." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 662 (1993). The FRSA also includes an express preemption provision, which provides in pertinent part that a state retains authority to regulate railroad safety, but only "until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106 (a) (1)-(2). A state may adopt a more stringent requirement as long as it: "(A) is necessary to eliminate or reduce

6

an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce." 49 U.S.C. § 20106 (a)(2). However, on August 3, 2007, Congress clarified its position on the FRSA's preemptive effect:

> (b) Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party-
>
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.
>
> (c) Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106 (b)-(c).

Here, the Hunters have brought state-law negligence claims against Defendants, alleging that: (a) the train was operated at excessive speed, (b) the train operators failed to keep a proper lookout, (c) the train operators failed to slow the train down when they saw, or should have seen, a vehicle approaching the crossing, (d) the train operators failed to utilize a warning device properly, and (e) signs, markings, and warning devices

protecting the crossing were inadequate. (Am. Compl. ¶ 6.) The Amended Complaint does not disclose any federal issue or statute, much less plead any federal cause of action. Nevertheless, Defendants argue that this Court has federal-question jurisdiction in this case because the Hunters' claims of excessive speed and inadequacy of signs, markings and warning devices protecting the crossings are completely preempted by federal law and regulations. (Defs.' Mem. at 4.) Defendants assert that the United States Supreme Court has held that such claims are preempted. See, e.g., Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 358-59 (2000) (holding that 49 C.F.R. §§ 646.214(b)(3) and (4) covered the subject matter of the adequacy of warning devices installed with the participation of federal funds); Easterwood, 507 U.S. at 676 (holding that 49 C.F.R. § 213.9 covered the subject matter of claims alleging excessive speed).[5] However, these cases were decided before Congress clarified its position on the preemptive effect of the FRSA.

## II.     Congress has Clarified the Preemptive Effect of 49 U.S.C. § 20106

"[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress." Metro. Life, 481 U.S. at 66. A review of the legislative history shows that Congress clarified its position on the preemptive effect of 49 U.S.C. § 20106 in response to a train derailment that took place in Minot, North Dakota. 153 Cong. Rec. H8496-01, at *H8589 (daily ed. July 25, 2007). On January 18, 2002, a Canadian Pacific Railway freight train derailed in a

---

[5] Defendants assert that federal funds were utilized to install the grade crossing warning devices at the site where the accident allegedly occurred. (Plambeck Aff. Ex. D.) Defendants also assert that the train was traveling at a rate of speed within the 60 mile per hour limit set by the federal regulations. (Id. Ex. A.)

8

residential town near Minot. See Lundeen v. Canadian Pac. Ry. Co., __ F. Supp. 2d. __, 2007 WL 465703, at *1 (D. Minn. Feb. 2, 2007). As a result of the derailment, five tanker cars released more than 220,000 gallons of anhydrous ammonia into the environment. Id. Many of those exposed to the gas suffered major injuries and one person died as a result of the vapor plume. Id. A number of lawsuits were filed as a result of the accident and many of them were dismissed on the basis that federal law preempted the state law claims. See, e.g., Mehl v. Canadian Pac. Ry., Ltd., 417 F. Supp. 2d 1104, 1120 (D.N.D. 2006).

Several federal district courts struggled with the harsh impact of the FRSA's preemptive effect because it essentially left the plaintiffs without a remedy for this tragic accident. See, e.g., id. at 1120. The federal district court in North Dakota summarized this result:

> The Federal Railroad Safety Act passed by Congress in 1970 has ensured national uniformity of railroad safety regulations, but it has also absolved railroads from any common law liability for failure to comply with the safety regulations. It is clear that Congress determined that there was a need for national uniformity and a need to adopt standard federal regulations to protect the public rather than allow for varied and inconsistent state law remedies. State law claims have been preempted by federal law. While the Federal Railroad Safety Act does provide for civil penalties to be imposed on non-compliant railroads, the legislation fails to provide any method to make injured parties whole and, in fact, closes every available door and remedy for injured parties. As a result, the judicial system is left with a law that is inherently unfair to innocent bystanders and property owners who may be injured by the negligent actions of railroad companies . . . . Such an unfair and inequitable result should be addressed through legislative action.

Id.; see also Norfolk, 529 U.S. at 360 (Ginsburg, J., dissenting) (the displacement of state negligence law "with no substantive federal standard of conduct to fill the void" creates an outcome that "defies common sense and sound policy").

On August 3, 2007, Congress acted to address this issue by clarifying the preemptive effect of the FRSA. First, Congress addressed the affirmative defense of preemption by providing that the FRSA no longer preempts actions filed under state law seeking damages for personal injury, death or property damages in cases where a plaintiff alleges that a railroad has failed to comply with federal standards of care, its own safety standards, or state laws that do not directly conflict with a federal regulation. 153 Cong. Rec. H8496-01, at *H8590 (daily ed. July 25, 2007). Congress also included a retroactivity provision, which clarifies that 49 U.S.C. § 20106 applies "to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002, the date of the Minot, North Dakota derailment." Id. Notably, the legislative history shows that Congress specifically made reference to the jurisdictional issue of complete preemption and explained that "nothing in 49 U.S.C. § 20106 creates a federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action." Id. Thus, Congress has clearly answered the jurisdictional question of complete preemption – it does not apply here. However, the railroad can still raise the affirmative defense of preemption to the trial court that has jurisdiction over the case.

Despite Congress's clarification that complete preemption does not apply, Defendants argue that the Hunters' "claims of excessive speed and inadequate warnings

10

are not the type of state law claims which were saved from preemption by the new federal legislation" and that the retroactive provision does not apply in this case.[6] (Defs.' Mem. at 16-18.) Defendants also assert that there is no North Dakota state law reducing the track speed at this location and no North Dakota state law obligating a railroad to provide grade crossing protection in addition to or different than the federally funded crossbucks that were installed at this location. (Id.) However, these arguments are misplaced for two reasons. First, the case law relied upon by Defendants is inapplicable here because the courts in those cases had construed the previous version of 49 U.S.C. § 20106. Second, Defendants confuse "complete preemption" with the defense of preemption. The sole issue before the Court is the jurisdictional question of removal under the complete-preemption doctrine, rather than the defense of preemption. Here, Congress has made it crystal clear that 49 U.S.C. § 20106 <u>does not</u> create a federal cause of action on behalf of an injured party or confer federal-question jurisdiction for such state law causes of action. Defendants' arguments address the affirmative defense of preemption, but not the jurisdictional question under the complete-preemption doctrine. But even assuming that the Hunters' state law claims of excessive speed and inadequate warnings are preempted by federal law, the Supreme Court (and now Congress with respect to this statute) has made it perfectly clear that the defense of preemption does not suffice to provide federal-question jurisdiction so as to permit removal. See <u>Metro. Life</u>, 481 U.S. at 66 (even an "obvious" preemption defense will not create removal jurisdiction).

---

[6] The Court is not persuaded by the argument that the retroactive provision does not apply here, as 49 U.S.C. § 20106 expressly provides that it applies "to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002."

11

Complete preemption is rare, and doubtful cases must be resolved in favor of remand. Gaming Corp., 88 F.3d at 543. Here, the negligence claims asserted in the Hunters' Amended Complaint are state-law claims and Congress has expressly provided that there is no exclusive federal cause of action that would encompass the Hunters' claims. Thus, Defendants may not remove this action to federal court under the doctrine of "complete preemption." Whether the affirmative defense of preemption applies in this case is for the state court to decide. Visina, 2007 WL 2908043, at *12 (citing Caterpillar, 482 U.S. at 398 n.13); accord Lontz v. Tharp, 413 F.3d 435, 438 (4th Cir. 2005) ("We express no view as to whether such claims on the merits are preempted by federal law, as this is a question for state courts to resolve."). Accordingly, the Court must remand this case to state court for lack of subject-matter jurisdiction. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### III.  The Hunters are Not Entitled to Attorney's Fees and Costs

"When an action is erroneously removed to Federal Court, and the removal results in a remand to State Court, costs are properly assessed against the removing party." Moline Mach., Ltd. v. Pillsbury Co., 259 F. Supp. 2d 892, 905 (D. Minn. 2003) (citing In re Iowa Mfg. Co., 747 F.2d 462, 463 n.2 (8th Cir. 1984)). The Hunters argue that they are entitled to attorney's fees and costs incurred in connection with their Motion to Remand because Defendants had no basis to remove this case. (Pls.' Mem. at 10-11.) Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the

12

removal." But, "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Here, CP had an objectively reasonable basis for seeking removal. CP sought removal on the basis of federal-question jurisdiction, which occurred before Congress clarified that complete preemption does not apply here. While the Court concludes that remand is warranted here, it also finds that CP reasonably believed that there was federal-question jurisdiction at the time it filed its Notice of Removal. Accordingly, the Court will deny the Hunters' request for attorney's fees and costs.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Hunters' Motion to Remand (Doc. No. 9) is **GRANTED** and this action is **REMANDED** to the Hennepin County District Court pursuant to 28 U.S.C. § 1447(c). The Clerk of the Court shall mail to the Clerk of the Hennepin County District Court a certified copy of this Memorandum Opinion and Order.

Dated: November  16 , 2007

                                               s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge